Filed 2/8/22  P. v. Austin CA2/6

Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LENARD AUSTIN, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B301152<br>(Super. Ct. No. 1027776)<br>(Santa Barbara County)<br><br>OPINION ON REMAND |

        Lenard Austin, Jr., who was convicted of attempted murder in 2001, appeals the summary denial of his petition for resentencing under Penal Code[1] section 1170.95.  In a November 2020 unpublished decision, we affirmed on the ground that relief under section 1170.95 was not available to those convicted of attempted murder rather than murder.  (*People v. Austin* (Nov. 25, 2020, B301152) [nonpub. opn.].)  Austin petitioned for review in the California Supreme Court.  The court granted review and

_____

        [1] All statutory references are to the Penal Code.

held the case along with numerous similar cases. While the matter was pending, the Governor signed into law Senate Bill No. 775 (Senate Bill 775), which amended section 1170.95 to expand eligibility for resentencing to persons convicted of attempted murder. (Stats. 2021, ch. 551.)

On December 22, 2021, the California Supreme Court transferred the case back to this court with directions to vacate our prior decision and reconsider the matter in light of Senate Bill 775. (*People v. Austin* (Dec. 22, 2021, S266398).) The parties submitted supplemental briefing in which they agree that the matter must be remanded. We agree with the parties and accordingly reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The relevant facts are recited from our 2003 unpublished opinion affirming the convictions of Austin and his codefendant Steven Lee. (*People v. Lee* (June 30, 2003, B154641) [nonpub. opn.].) Lee and Austin entered Anthony's Jewelers in Santa Maria wearing wigs, hats, fake beards, heavy jackets, and black boots. When the owner's son, Jeffrey Shreves, asked if he could help them, they said they were just browsing. After looking into all the display cases, they left. Shortly thereafter, appellants returned, feigning interest in a bracelet.

The third time appellants entered, they asked to speak to the store's owner, Anthony Chaparro. Chaparro became frightened and asked his son to write down a license plate number if anything should happen. Chaparro asked two other employees to stay near panic buttons. Chaparro asked appellants if he could help them. Appellants did not respond, so Chaparro asked appellants, "What the fuck do you want?" Austin

replied, "fuck you." Chaparro retorted, "get the fuck out of my store."

As appellants appeared to be leaving the store, Lee whirled around, grabbed Shreves from behind, and threw him to the ground. Lee pulled a semiautomatic gun from his jacket, pointed it at Shreves, dragged him from the front of the store, and handcuffed him. The receptionist, Misty Sinay, pressed a silent alarm and ducked down. Chaparro fled out the back door and called the police. Estiban Rodriguez, the jewelry repairman, observed this activity on his television monitor. He pushed his panic button and hid in the back of the store.

Lee demanded that Shreves hand over the keys and retrieve the tape from the surveillance system. Shreves was scared and responded he did not have the keys.

Lee pointed his gun at Danielle Pfaendler, the assistant manager, who was crouching underneath a desk nearby. Lee told Pfaendler to give him the three rings that were on her fingers, directed her to lie down next to Shreves, and handcuffed her.

Pfaendler saw one of the men bring Sinay into the back room to retrieve the security tape for Lee, but Sinay did not know how to do it. When she attempted to extract the tape, it jammed. Austin grabbed her arm, pointed his revolver at her, and yelled at her to open the glass jewelry cases. After telling Austin she did not have the keys to open the jewelry cases, she saw him smash open the cases with the butt of his gun and scoop up jewelry with his hands. Shreves also saw appellants scooping up jewelry into their arms. Lee told Sinay to lie on the ground next to Shreves and Pfaendler, and he handcuffed her.

After asking Shreves and Pfaendler where the cash drawer was, Lee took some money and repaired jewelry from two

3

drawers. One of the men took Shreves' wallet from his back pocket as they ran towards the back door. As they reached the back door, appellants saw Rodriguez and pointed a gun at him. Chaparro saw appellants flee out the back door as he was talking to a police dispatcher on a cell phone outside a nearby restaurant.

The police converged on the scene, ran after appellants, and shouted at them to stop. Officer McCray, who was unarmed, nearly ran into Lee. Officers McCray and Streker, and other witnesses, testified that Lee pointed a gun at McCray's head and shot once from a distance of about five feet. Officer McCray flinched, jumped to his left, fell to the ground and sought cover behind Streker's motorcycle. Officer Streker screamed at McCray, asking if he had been hit. Officer Streker thought Lee pointed his 9 millimeter gun at him, too.

Police continued to yell at Lee to stop, but he continued to run while firing another round at the officers. Police shot at Lee several times, striking him as he jumped a picket fence. The wounded Lee fell to the ground.

After Lee shot at the police, Lee and Austin split up. Austin ran between two houses where he disappeared from view. A neighbor saw Austin throw a large revolver away. Officers found Austin hiding in a garbage can and arrested him as he tried to escape. Officer McCray found a .44 Dan Wesson revolver with five live rounds in it lying in the center median of the street near where Austin was arrested. The gun had been recently fired, but no shell casings were found in the vicinity.

While patting down Austin, police found many pieces of jewelry in his pockets with tags from Anthony's Jewelers on them. The police found more items of jewelry, two wigs, a metal briefcase, and a loaded Daewoo semiautomatic pistol near where

4

Lee and Austin were captured. Jewelry was also found on the ground behind the store.

When police approached Lee, who was lying on the ground, they found a Beretta semiautomatic pistol about a foot away from his right hand. The safety of the Beretta was off, no round was in the chamber, and its magazine was found at the base of the fence. A shell casing was found nearby. The casing did not match any of the munitions issued to the policemen who fired at the scene, but it did match some of those within the magazine of Lee's Beretta.

A jury convicted Austin of attempted murder of a peace officer (§§ 187, subd. (a), 664), assault on a peace officer (§ 245, subd. (d)(2)), exhibiting a weapon with the intent to resist an officer (§ 417.8), five counts of robbery (§ 211), and commercial burglary (§ 459). The jury also found true allegations that Austin personally and intentionally used and discharged a firearm and that he knew or should have known that the victim of the attempted murder was a peace officer (§§ 12022.5, subd. (a), 12022.53, subd. (b)). He was sentenced to life without the possibility of parole plus 33 years and 8 months. His convictions and sentence were subsequently affirmed on appeal. (*People v. Lee, supra*, B154641.)

In July 2019, Austin filed a petition for resentencing under section 1170.95. The trial court found that appellant was ineligible for relief under section 1170.95 because he was convicted of attempted murder rather than murder, and accordingly denied the petition. After we affirmed the judgment on appeal, the Supreme Court granted review, transferred the matter back to this court, and directed us to vacate our decision and reconsider the matter in light of Senate Bill 775.

5

## DISCUSSION

In a supplemental brief, the People concede that a reversal and remand is required. We accept the People's concession.

Senate Bill 1437 enacted section 1170.95, which "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

Prior to the enactment of Senate Bill 775, the Courts of Appeal were split on whether Senate Bill 1437 applied to attempted murder. Senate Bill 775 resolved this split of authority by amending Senate Bill 1437 to explicitly afford relief to persons convicted of attempted murder and manslaughter. Senate Bill 775's amendments to section 1170.95 became effective January 1, 2022. Austin's appeal from the denial of his resentencing petition was not final as of that date, so he is entitled to the benefit of the new provisions in section 1170.95. (*People v. Porter* (2022) 73 Cal.App.5th 644.) Accordingly, we shall remand the case so the trial court may reconsider whether Austin has stated a prima facie case that he is entitled to relief under section 1170.95 as amended January 1, 2022. We express no opinion on how the petition should ultimately be resolved.

## DISPOSITION

The trial court's order denying Austin's section 1170.95 petition is reversed. The case is remanded to the trial court to appoint counsel and conduct further proceedings consistent with section 1170.95, subdivision (c).

6

NOT TO BE PUBLISHED.


                                    PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.

Gustavo Lavayen, Judge

Superior Court County of Santa Barbara

_____

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Colleen M. Tiedemann, Deputy Attorney General, for Plaintiff and Respondent.